IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 24, 2018 Session

## STATE OF TENNESSEE v. NIKIA BOWENS

**Appeal from the Criminal Court for Knox County**
**No. 105992, 106786      Steven Wayne Sword, Judge**

**_____**

## No. E2017-02075-CCA-R3-CD

**_____**

A jury convicted Defendant, Nikia Bowens, of six counts of theft of property under the value of $500 and burglary in case number 105992, and of theft of property under the value of $500 and burglary in case number 106786. The trial court ordered Defendant to serve a total effective sentence of eighteen years in the Tennessee Department of Correction for his convictions in both cases. On appeal, Defendant does not challenge the theft convictions, but asserts that his burglary convictions violate the principles of due process under the Tennessee and United States Constitutions because Tennessee Code Annotated section 39-14-402(a)(3) is unconstitutionally vague and does not provide defendants fair warning that they can be prosecuted for burglary if they commit or attempt to commit a felony, theft or assault after entering a building open to the public knowing that the property owner has revoked its consent for them to enter. After a thorough review of the facts and applicable case law, we conclude that subsection 39-14-402(a)(3) is not vague, that the word "building" in subsection -402(a)(3) is not ambiguous, and that Defendant's due process rights were not violated by his burglary convictions. Thus, we affirm Defendant's convictions, but remand for correction of judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J. ROSS DYER, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for the appellant, Nikia Bowens.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Charme Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

Mark E. Stephens, District Public Defender; and Jonathan Harwell, Assistant District Public Defender, Knoxville, Tennessee, for the *Amicus Curiae*, Knox County Public Defender's Community Law Office.

## OPINION

### I. Factual and Procedural Background

On August 5, 2015, the Knox County Grand Jury indicted Defendant in case number 105992 for the following offenses:

| Count | Offense |
| --- | --- |
| Count one | Theft of property between the value of $500 and $1,000 |
| Count two | Theft of property between the value of $500 and $1,000 |
| Count three | Theft of property between the value of $500 and $1,000 |
| Count four | Theft of property between the value of $500 and $1,000 |
| Count five | Theft of property between the value of $500 and $1,000 |
| Count six | Theft of property between the value of $500 and $1,000 |
| Count seven | Criminal trespass |
| Count eight | Possession of tools to disable theft deterrent devices |
| Count nine | Possession of tools to disable theft deterrent devices |
| Count ten | Burglary |

On November 17, 2015, the Knox County Grand Jury indicted Defendant in case number 106786 for two counts of theft of property between the value of $500 and $1,000 and burglary.

### *Jury Trial in case number 105992*

The State moved to amend counts one, two, five, and six, from theft of property between the value of $500 and $1,000 to theft of property under the value of $500. The State also moved to dismiss count seven, criminal trespass. The trial court granted both motions.

Corey McGaha testified that he was employed as an asset protection associate at the Walmart on Chapman Highway in Knoxville. In May 2014, Mr. McGaha

encountered Defendant at that Walmart location. He determined that Defendant was prohibited from entering Walmart property and that Defendant had been notified of the ban previously.

Stephen Roberts testified that he worked at Walmart and observed Defendant at the East Towne Walmart location on July 24, 2014. Mr. Roberts informed Defendant that he was prohibited from entering any Walmart property for life. On cross-examination, Mr. Roberts explained that, when he informs an individual that he or she is banned from Walmart, he also informs the individual that they may be prosecuted for criminal trespass if they return to a Walmart property.

Ashley Crowley testified that she was employed at Walmart in Oak Ridge as an asset protection associate. On November 12, 2014, Ms. Crowley encountered Defendant at the Oak Ridge Walmart. Ms. Crowley determined that Defendant was prohibited from being on Walmart property, and she gave Defendant a written notice that he was prohibited from trespassing on Walmart property. Ms. Crowley signed the form and wrote "lifetime" on the form to indicate that Defendant was banned from entering Walmart property for life.

Brandon Shope testified that he was employed as an asset protection associate at the Turkey Creek Walmart location. On December 19, 2014, Mr. Shope observed Defendant at the Turkey Creek Walmart. Mr. Shope explained that a customer had asked him to retrieve surveillance footage to determine if an individual had taken the customer's tablet from the customer's person. Mr. Shope received a phone call from Deputy Lee Strzelecki with the Knox County Sheriff's Office (KCSO) and met Deputy Strzelecki outside the Walmart store. Deputy Strzelecki had apprehended three individuals on suspicion of shoplifting, including Defendant. Mr. Shope retrieved stolen merchandise from the suspects, obtained their information, and took photographs of them. Defendant informed Mr. Shope that his photograph was already in Walmart's APIS database.[1] Mr. Shope reviewed additional surveillance footage and determined that Defendant stole the tablet from the customer. Mr. Shope also entered Defendant's information into the APIS database and confirmed that Defendant was in the database. Defendant had been entered into the APIS database ten times previously. Mr. Shope also noted that Defendant had received a no trespass notice from Walmart on April 2, 2012, and on November 12, 2014. Mr. Shope identified video surveillance footage of Defendant's stealing the customer's tablet and other merchandise at the Turkey Creek Walmart, and the footage was played for the jury. Mr. Shope testified that Walmart never rescinded its notice prohibiting Defendant from entering Walmart property.

---

[1] Mr. Shope explained that the APIS database contained information on individuals who had previously shoplifted from Walmart.

Mark Harper testified that, on December 19, 2014, he was employed as a reserve deputy for the KCSO as a part of the shoplifting task force. On that day, Deputy Harper was at the Turkey Creek Walmart in civilian clothes when he was notified by Deputy Strzelecki that individuals suspected of shoplifting were headed to the front of the store. After exiting the store with Deputy Strzelecki, Deputy Harper interviewed the suspects at their vehicle and arrested them on suspicion of shoplifting. Defendant was among the individuals that Deputy Harper detained and interviewed. During a pat-down search of Defendant's person, Deputy Harper found stolen merchandise and a tool used to remove anti-theft devices from merchandise.

Deputy Strzelecki testified that, on December 19, 2014, he worked on the shoplifting task force with the KCSO. He stated that, on that day, he was in the parking lot of the Turkey Creek Walmart when another officer alerted him that suspected shoplifters had exited the store. Deputy Strzelecki interviewed the driver of the vehicle while Deputy Harper searched Defendant. Deputy Strzelecki observed the tool that Deputy Harper found on Defendant and explained that the tool could pry off security devices so that a shoplifter could leave a store without setting off the alarm.

Detective Coby Woodrum testified that, on December 19, 2014, he worked at the KCSO as a part of the shoplifting task force. Detective Woodrum responded to the Turkey Creek Walmart after being notified that individuals had shoplifted from the store. When Detective Woodrum arrived, Deputies Strzelecki and Harper were searching the suspects. Detective Woodrum learned that an individual reported having his tablet stolen inside Walmart, and the individual identified the tablet found on Defendant as his property. After Defendant was taken into custody, Defendant stated that he was responsible for the thefts.

Defendant decided not to testify. The jury found Defendant guilty of six counts of theft of property under the value of $500 and burglary. The jury acquitted Defendant of possession of tools to disable theft deterrent devices in counts eight and nine. Defendant received an effective sentence of eight years as a Range III persistent offender to be served in the Tennessee Department of Correction.

### *Jury trial in case number 106786*

The State moved to dismiss count two, theft of property between the value of $500 and $1,000.

Matt Hardin testified that, on April 2, 2012, he worked as an asset protection associate at the Kinzel Way Walmart location. Mr. Hardin identified a no trespass notice

that prohibited Defendant from entering Walmart property that Mr. Hardin signed on April 2, 2012. Defendant was unable to sign the no trespass notice because he was handcuffed, but Mr. Hardin testified that he informed Defendant that he was prohibited from entering the property of any Walmart store in the future.

Mr. Roberts testified that, on March 23, 2013, he observed Defendant shoplifting at the East Towne Walmart location. Mr. Roberts stated that Defendant left the property when Mr. Roberts identified himself as an asset protection associate. On July 24, 2014, Mr. Roberts again observed Defendant on the property of the East Towne Walmart location. Mr. Roberts informed Defendant that he was banned for life from entering any Walmart property but did not fill out a no trespass notice form.

Mr. McGaha testified that he encountered Defendant on May 29, 2014. Mr. McGaha explained that his supervisor informed Defendant that he was banned from Walmart property.

Ms. Crowley testified that she worked at the Oak Ridge Walmart location on November 12, 2014. Ms. Crowley identified a no trespass notice that informed Defendant that he was prohibited from entering Walmart property for life. She explained that she wrote "lifetime" on the preprinted form and that both she and Defendant signed the form.

Mr. Shope testified that, on December 19, 2014, he observed Defendant at the Turkey Creek Walmart. Defendant informed Mr. Shope that he knew he was in Walmart's database of individuals banned from Walmart property.

Tiffany Ward testified that, on August 4, 2015, she worked as an asset protection associate at Walmart. On that day, she worked at the University Commons Walmart and observed Defendant enter the store. Ms. Ward stated:

> [Defendant] had a shopping cart that he was pushing around. He acted really nervous, kind of jittery. [Defendant] [k]ept looking around over his shoulders for cameras, watching behind him. He was selecting different merchandise throughout the store, placing it in the cart. He had also grabbed some shopping bags as he first came in the door. He took that cart and pushed it to the infants department, and he left it there, and he met up with a female that had a buggy of groceries. They went to the front and paid for those groceries.
>
> She exited the building while [Defendant] took the cart back to infants. He then proceeded to take some of the merchandise out of the

buggy that he had selected prior, started placing it in the shopping bags that had the paid merchandise in there. After he got what he wanted, he proceeded back up to the front, and he exited the store, at which point myself and my witness approached him. I identified ourselves, asked him to come back into the office, and he complied. Well, soon as we got in the office, I asked for his name. He gave it. Ran him through our system, and that's where I found that he had been caught and trespassed multiple times prior.

Ms. Ward explained that Defendant did not have Walmart's consent to enter the building on August 4, 2015. She stated that Defendant stole $37.81 of merchandise from Walmart. Ms. Ward had Defendant sign a no trespass notice that day, prohibiting him from entering any Walmart building or property. Ms. Ward testified that Tonya Payne, the supervisor of the asset protection department, also witnessed Defendant's theft on August 4, 2015.

During cross-examination, Ms. Ward stated that she asked Defendant for some identifying information, and based on this information, Ms. Ward realized that Defendant had been caught shoplifting at Walmart previously and had been banned from Walmart property. The no trespass form that Defendant and Ms. Ward signed was a preprinted form prepared by the Walmart corporation headquarters that banned Defendant from trespassing on Walmart property in the future. Ms. Ward wrote on the form that Defendant was prohibited from entering Walmart property for life. Ms. Ward explained that the lifetime ban was in effect until Walmart rescinded the ban. She stated that Walmart had not rescinded its previous bans on Defendant from entering Walmart property.

The jury found Defendant guilty of theft of property under the value of $500 in count one and burglary in count three. Defendant received an effective sentence of eight years as a Range III persistent offender to be served in the Tennessee Department of Correction consecutively to his sentence in case number 105992, for a total effective sentence of sixteen years' incarceration. Defendant filed a timely motion for new trial, which the trial court denied. Defendant now timely appeals the trial court's judgments.

## II. Analysis

On appeal, Defendant argues that his conviction for burglary of a building that was open to the public violates the due process clause of the Tennessee Constitution and the United States Constitution because subsection 39-14-402(a)(3) "does not criminalize Defendant's conduct." He asserts that this court should vacate his burglary convictions, dismiss the indictments, and remand for resentencing. He argues that there is "an

inherent ambiguity" regarding the meaning of the word "building" in subsection 39-14-402(a)(3) and that "building" in (a)(3) actually means a building "not open to the public." Defendant cites to *Burglary at Wal-Mart: Innovative Prosecutions of Banned Shoplifters Under Tenn. Code Ann. § 39-14-402* by Jonathan Harwell ("the Harwell article") and *State v. Danielle Chandria Jensen*, No. M2016-01553-CCA-R10-CD, 2017 WL 3671093, at *9-10 (Tenn. Crim. App. Aug. 25, 2017), *judgment vacated* (Tenn. Dec. 8, 2017), to support his argument.

After being granted leave by this court, *Amicus Curiae* filed a brief raising two questions in support of Defendant:

1. Does an individual commit burglary who, having been previously provided with a notice banning him or her from a retail store, subsequently enters that store at a time when it is open to the public and then shoplifts?

2. Does a retail store "effectively consent" to the entry of individuals, even if that store has previously given them notice to stay out, if it allows them to enter, shop, and conduct legitimate transactions, and checks the database to see if they have been banned only if they are suspected of theft?

The State contends that subsection 39-14-402(a)(3) is unambiguous and permits prosecution for burglary of an individual who enters a building open to the public, without the consent of the property owner, and commits a theft. The State argues that this court "should presume that the General Assembly acted deliberately in limiting the reach of [Tennessee Code Annotated section] 39-14-402(a)(1) to buildings other than habitations not open to the public and likewise acted deliberately in not so limiting the reach of [Tennessee Code Annotated section] § 39-14-402(a)(3)." We agree with the State.

### Standard of Review

This court reviews constitutional issues de novo. *State v. Merriman*, 410 S.W.3d 779, 791 (Tenn. 2013). Statutory interpretation and the application of a statute to facts that are not in dispute present a question of law, which this court reviews de novo with no presumption of correctness. *Kyle v. Williams*, 98 S.W.3d 661, 663-64 (Tenn. 2003).

## *Fair Warning and Vagueness Doctrines*

Defendant's due process arguments are grounded in the interrelated doctrines of vagueness and fair warning. The vagueness doctrine is "mandated by the Due Process Clauses of the Fifth Amendment (with respect to the Federal Government) and the Fourteenth Amendment (with respect to the States)." *Welch v. United States*, 136 S. Ct. 1257, 1261-62 (2016). The Tennessee Constitution provides that no person shall be "deprived of his life, liberty or property, but by the judgment of his peers or the law of the land." Tenn. Const. art. I, § 8.

In *United States v. Harriss*, 347 U.S. 612, 617, (1954), the United States Supreme Court characterized the fair notice principle as follows:

> The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.

A criminal statute "must give fair warning of the conduct that it makes a crime[.]" *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964). The doctrine of fair warning is closely linked to the doctrine of vagueness. "The primary purpose of the vagueness doctrine is to ensure that our statutes provide fair warning as to the nature of forbidden conduct so that individuals are not 'held criminally responsible for conduct which [they] could not reasonably understand to be proscribed.'" *State v. Crank*, 468 S.W.3d 15, 22-23 (Tenn. 2015) (alteration in original) (quoting *Harriss*, 347 U.S. at 617).

The Tennessee Supreme Court, in a case involving a statute proscribing gambling devices, stated the following about fair warning:

> A statute may be void for vagueness if it is not "sufficiently precise to put an individual on notice of prohibited activities." *State v. Wilkins*, 655 S.W.2d 914, 915 (Tenn. 1983). A criminal statute must be construed according to the fair import of its terms when determining if it is vague. *See* Tenn. Code Ann. § 39-11-104 (1989). Due process requires that a statute provide "fair warning" and prohibits holding an individual criminally liable for conduct that a person of common intelligence would not have reasonably understood to be proscribed. *Grayned v. City of Rockford*, 408 U.S. 104, [108] . . . (1972); *see also State v. Lyons*, 802 S.W.2d 590, 591 (Tenn. 1990). The fair warning requirement, however,

- 8 -

does not demand absolute precision in the drafting of criminal statutes. *See Wilkins*, 655 S.W.2d at 916. . . . In fact, it is the duty of the courts "to adopt a construction which will sustain a statute and avoid constitutional conflict if its recitation permits such a construction." *Lyons*, 802 S.W.2d at 592.

*State v. Burkhart*, 58 S.W.3d 694, 697-98 (Tenn. 2001).

The text of a statute can be vague or ambiguous but nevertheless provide fair warning of the prohibited conduct and not render the statute unconstitutionally vague. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 527 (Tenn. 2010). "It is only when the wording of a statute is 'so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application,' that the statute is unconstitutional." *Estrin v. Moss*, 430 S.W.2d 345, 351-52 (Tenn. 1968) (quoting *Connally v. General Construction Company*, 269 U.S. 385 (1925)).

### *Rule of Lenity*

Defendant argues that "the rule of lenity weighs in favor of interpreting [a] statute narrowly in a defendant's favor." The rule of lenity is related to the doctrine of vagueness and the principle of fair warning. "The rule of lenity is 'rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his or her conduct is prohibited.'" *State v. Hawkins*, 406 S.W.3d 121, 137-138 (Tenn. 2013) (quoting *State v. Marshall*, 319 S.W.3d 558, 563 (Tenn. 2010)). Where there is ambiguity in a statue, the rule of lenity requires the ambiguity to be resolved in favor of a defendant. *State v. Smith*, 436 S.W.3d 751, 768 (Tenn. 2014). The rule of lenity "reflects not merely a convenient maxim of statutory construction" but is based on "fundamental principles of due process[.]" *Dunn v. United States*, 442 U.S. 100, 112 (1979).

### *Ambiguity*

A word or phrase is ambiguous if it "can reasonably have more than one meaning[.]" *Lee Med. Inc.*, 312 S.W.3d at 527. A statute is ambiguous if the language "is susceptible [to] more than one reasonable interpretation[.]" *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 512 (Tenn. 2001).

### *Tennessee's Burglary Statute*

Perhaps no common law criminal offense has changed as drastically as burglary over the decades. At common law, burglary involved breaking and entering a dwelling

place in the night, with the intent to commit a felony. *See Davis v. State*, 43 Tenn. 77, 80 (Tenn. 1866). Today, a person can commit burglary without having to "break" into anything. The common law requirement of "breaking" has been replaced by entering without the owner's effective consent. *See* Tenn. Code Ann. § 39-14-402. The property burglarized no longer has to be a dwelling place, and under modern burglary statutes, the property burglarized no longer even has to be real property. A person can commit burglary of a "freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle." Tenn. Code Ann. § 39-14-402(a)(4). Burglary no longer has to take place at night. Burglary is no longer solely an inchoate crime. Pursuant to Tennessee Code Annotated subsection 39-14-402(a)(3), a person can be convicted of burglary without having the *intent* to commit a felony, theft, or assault at the time the person entered a building.

The crime of burglary is codified at Tennessee Code Annotated section 39-14-402. Subsection (a), which is the part of the statute relevant to this case, was first enacted in 1989 and was last amended in 1995, and provides:

> (a) A person commits burglary who, *without the effective consent of the property owner*:
>
> (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;
>
> (2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;
>
> (3) *Enters a building and commits or attempts to commit a felony, theft or assault*; or
>
> (4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

Tenn. Code Ann. § 39-14-402(a) (2015) (emphasis added).

Certain words and terms in the burglary statute are defined in title 39 of our Code. "Habitation" is defined as "any structure, including buildings, . . . which is designed or adapted for the overnight accommodations of persons[.]" Tenn. Code Ann. § 39-14-401(1)(A) (2015). "Effective consent" is defined in Tennessee Code Annotated subsection 39-11-106(a)(9) as follows:

(9) "Effective consent" means assent in fact, whether express or apparent, including assent by one legally authorized to act for another. Consent is not effective when:

(A) Induced by deception or coercion;

(B) Given by a person the defendant knows is not authorized to act as an agent;

(C) Given by a person who, by reason of youth, mental disease or defect, or intoxication, is known by the defendant to be unable to make reasonable decisions regarding the subject matter; or

(D) Given solely to detect the commission of an offense[.]

Tenn. Code Ann. § 39-11-106(a)(9) (2015).

When the legislature does not provide a specific definition for a statutory term, this court may look to other sources, including **Black's Law Dictionary**, for guidance. *State v. Edmondson*, 231 S.W.3d 925, 928 (Tenn. 2007). Assent has been defined as an "agreement, approval, or permission; esp., verbal or nonverbal conduct reasonably interpreted as willingness." **Black's Law Dictionary** 115-16 (10th ed. 2014). "Building" is defined as a "structure with walls and a roof, esp. a permanent structure." **Black's Law Dictionary** 194-95 (10th ed. 2014).

### *The Word "Building" in Tennessee Code Annotated section 39-14-402*

Adopting an argument from the Harwell article, Defendant claims that "in the context of the statutory language, there appears to be an *inherent ambiguity* in whether 'building' as the term is used in [section 39-14-402] is one that is 'not open to the public' in [subsections (a)(1)–(3)], or whether the 'not open to the public' status applies only to [subsection (a)(1).]" Mr. Harwell opined that the word "building" in subsection -402(a)(3) "is merely a shorthand reference" to the phrase in subsection -402(a)(1): "building other than a habitation (or any portion thereof) not open to the public." Harwell, *supra*, at 88. Additionally, *Amicus Curiae* claims that, because "building other than a habitation (or any portion thereof) not open to the public" is included in the text of section -402(a)(1), and because the word "building" in a section -402(a)(3) means a building other than a habitation, the rest of the phrase "not open to the public" must also apply to section -402(a)(3). However, these interpretations of section -402(a)(3) run contrary to several rules of statutory construction.

- 11 -

The canon of statutory construction *expressio unius est exclusio alterius* provides that "where the legislature includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that the legislature acted purposefully in the subject included or excluded." *State v. Loden*, 920 S.W.2d 261, 265 (Tenn. Crim. App. 1995); *see also State v. Pope*, 427 S.W.3d 363, 368 (Tenn. 2013). We will therefore presume that the legislature purposely included the phrase "not open to the public" in subsection -402(a)(1) and purposely excluded the same phrase from subsection -402(a)(3). The same presumption outlined in *Loden* applies to *Amicus Curiae's* claim that, because "other than habitation" applies to section -402(a)(3) without being explicitly stated, "not open to the public" must also apply. Again, we presume that the legislature purposely included "other than a habitation" in subsection -402(a)(1) and purposely excluded "other than a habitation" in subsection -402(a)(3).

Finally, in support of its argument that subsection -402(a)(3) is ambiguous and vague, *Amicus Curiae* claims that "[t]he most convincing proof" that the word "building" in subsection-402(a)(3) actually means a building not open to the public "is that for twenty years, it was accepted that the burglary statute would not apply to a theft in an open retail store. Prosecutors, defense attorneys, and judges looking at this statute interpreted it in that way -- a way the State now contends was simply wrong." We are not persuaded by this argument. Simply because a statute has been interpreted in a particular way for a period of time does not bar a new interpretation. The perfect example proving this point is the recent opinion of our supreme court in *State v. Gentry*, in which the court held for the first time that the theft of property statute, Tennessee Code Annotated section 39-14-103, "is broad enough to encompass theft of real property[.]" *State v. Gentry*, 538 S.W.3d 413, 426 (Tenn. 2017). In Tennessee, theft statutes, like burglary statutes, underwent a comprehensive revision in 1989, and our theft and burglary statutes today are substantially similar to the statutes enacted in 1989. The defendant in *Gentry* was indicted in May 2013. *Id.* at 417. Almost twenty-three years elapsed before the Shelby County Grand Jury indicted Gentry for theft of real property, and it took over twenty-six years before our supreme court held that a person could be convicted for the theft of real property under the theft of property statute. Thus, we conclude that section 39-14-402(a)(3) does not violate the fair warning doctrine merely because it has not been for a significant period of time employed to the prosecution of burglaries where a person entered a building open to the public, without the consent of the owner, and committed or attempted to commit a felony, theft, or assault.

### The Word "Building" in Subsection -402(a)(3) is Not Ambiguous

"Rather than speculating about the significance of provisions which are not included in the statute, a more effective method of understanding the intended purpose of the statute is to consider the words actually used." *Fletcher v. State*, 951 S.W.2d 378,

382 (Tenn. 1997). The legislature chose to use "building" in subsection -402(a)(3). "We presume that every word in a statute has meaning and purpose and should be given full effect if so doing does not violate the legislature's obvious intent." *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). We conclude that it was not the obvious intent of the legislature to limit the word "building" in subsection -402(a)(3) to buildings not open to the public. The word "building" is not a complex legal term, and we must give the word "building" its "natural and ordinary meaning." *See Lee Med., Inc.*, 312 S.W.3d at 526. As stated earlier "building" is defined as "a structure with walls and a roof, esp. a permanent structure." **Black's Law Dictionary** 194-95 (10th ed. 2014). When the statutory language is clear and unambiguous, we simply apply its plain meaning. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). We determine that "building" in subsection -402(a)(3) is not ambiguous and that the plain meaning of "building" is a structure with walls and a roof, including buildings open to the public. Because the word "building" in subsection 39-14-402(a)(3) is not ambiguous, there is no ambiguity to resolve in favor of Defendant under the rule of lenity. Section 39-14-402(a) is not vague and a person of common intelligence is not forced to speculate and therefore has fair warning about the conduct prohibited by subsection -402(a)(3).

### *Statutory Construction and Legislative Intent*

"The overriding purpose of a court in construing a statute is to ascertain and effectuate the legislative intent, without either expanding or contracting the statute's intended scope." *Wallace v. Metro. Gov't of Nashville*, 546 S.W.3d 47, 52-53 (Tenn. 2018). "In seeking to ascertain legislative intent, we must look to the entire statute in order to avoid any forced or subtle construction of the pertinent language." *Lyons v. Rasar*, 872 S.W.2d 895, 897 (Tenn. 1994). When a statute's text is unambiguous, we need look no further than the language of the statute itself. *See Lee Med., Inc.*, 312 S.W.3d at 527. "Only an ambiguity in the language of the statute will permit us to look behind its face to determine the legislature's intent." *State v. Powers*, 101 S.W.3d 383, 393 (Tenn. 2003). "[N]o matter how illuminating [the] non-codified external sources may be, they cannot provide a basis for departing from clear codified statutory provisions." *Lee Med., Inc.*, 312 S.W.3d at 528.

Although we have determined that section 39-14-402(a) is not vague and the word "building" in subsection -402(a) is not ambiguous, we recognize that another panel of this court, in dicta, apparently believed otherwise, although that opinion was vacated on procedural grounds. *See State v. Danielle Chandria Jensen*, No. M2016-01553-CCA-R10-CD, 2017 WL 3671093, at *10 (Tenn. Crim. App. Aug. 25, 2017) (quoting Harwell, *supra*, at 111-13) ("[T]he drafters of [subsection -402(a)(3)] did not intend for the statute to be (and, indeed, did not realize that it might be) interpreted to cover buildings that are open to the public."), *app. granted, judgment vacated* (Tenn. Dec. 8, 2017). For purposes

of judicial efficiency, we will address the arguments of the *Amicus Curiae* that the legislative history of the Tennessee burglary statute supports its contention that the Tennessee General Assembly did not intend to criminalize the entry into a building open to the public and subsequent commission of a felony, theft, or assault.

### *Legislative History of Texas Burglary Statute*

The Harwell article traces the origin of the "current Tennessee burglary statute" to a burglary statute enacted in Texas. In the mid 1960's, Texas began a revision of its penal code. According to Mr. Harwell, on November 3, 1967, the Texas Committee on Revision of the Penal Code met to discuss a proposed draft of a burglary statute, which contained a section that did not require intent at the time of entry. Harwell, *supra*, at 89-90. Subsection 221.1(1)(c) of the proposed draft stated that a person is guilty of burglary if "he enters or remains concealed in a building or occupied structure at a time when the building of [sic] occupied structure is not open to the public and the actor is not licensed or privileged to enter or remain and *commits or attempts to commit a felony or theft* (THEREIN)." *Id.* at 90 (emphasis added). Subsections (a) and (b) also contained the "not open to the public" language. Subsection 221.1(1)(c) ultimately was "denominated" subsection (a)(3). *Id.* at 94.

In July 1970, "the staff of the [Texas] Penal Code Revision Project sent a memorandum to the [Texas] State Bar Committee [on Revision of the Penal Code] with a variety of suggestions regarding different sections of the proposed draft." *Id.* at 94. Concerning the burglary statute, "staff offered two suggestions:" (1) that "without the owner's effective consent" be substituted for "without license or privilege" and (2) that subsection (a)(3) be deleted. *Id.* Concerning subsection (a)(3), the memorandum stated that "[i]t is not present Texas law, no other revising state has included it, and the staff cannot imagine a single example of its application." *Id.* The State Bar Committee accepted the staff's recommendation substituting "without effective consent" but rejected the recommendation to delete (a)(3). In October 1970, the State Bar Committee issued its proposed final draft which included a section on burglary. *Id.* at 94-95. Subsection 30.02 (a) of the draft provided:

> (a) An individual or corporation commits burglary if, without the effective consent of the property owner:
>
> (1) he enters a habitation, or a building (or any portion of a building) not open to the public, with intent to commit a felony or theft; or
>
> (2) he remains concealed, with intent to commit a felony or theft, in a building or habitation; or

- 14 -

(3) *he enters a building or habitation and commits or attempts to commit a felony or theft*.

*Id.* at 95 (emphasis added).

Concerning subsections (a)(2) and (a)(3) of the burglary statute, the Texas State Bar Committee offered the following comment:

> The concealment feature, Section 30.02(a)(2), is derived from present law, Penal Code arts. 1389. 1391, and covers, for example, one who, with the requisite intent, enters a business while it is open to the public and hides until it closes. Section 30.02(a)(3) includes as burglary the conduct of one who enters without effective consent but, lacking intent to commit any crime upon his entry, subsequently forms that intent and commits or attempts a felony or theft. This provision dispenses with the need to prove intent at the time of entry when the actor is caught in the act.

*Id.* at 98.

According to the Harwell article, "[t]here was no explanation, nor indeed any acknowledgment, of the change between the 1967 proposal and this one[:] the removal of the specification that section (a)(2) and section (a)(3), like section (a)(1), applied only to buildings not open to the public." *Id*. Also, according to Mr. Harwell:

> A bill was introduced into the Texas legislature encompassing a variation on this proposal. As to burglary, its language was the same as the proposed language with the exception that section (a)(3) was revised to read "a habitation, or a building (or any portion of a building) *not open to the public* . . . ." This bill died a quick death, however, and was tabled in May 1971, with the legislature instead proposing a committee to "study and educate the public in the proposed revision of the Texas Penal Code . . . ."

*Id.* at 99. (emphasis added). In 1974, after a period of study, the burglary statute that included section (a)(3) was enacted. *Id.*

### *Legislative History of Tennessee Burglary Statute*

In 1963, the Tennessee Law Revision Commission ("the Commission") was created to consider changes in the penal code. The Commission ultimately "settled on the Proposed Revision of the Texas Penal Code" as the "organizational backbone" of its

- 15 -

Proposed Final Draft which was published in November 1973. *Id.* at 100. The Commission's proposal "copied nearly verbatim, the Comments of the Texas proposal." *Id.* at 101. The criminal code was not, however, revised at that time.

In the 1989, the Tennessee General Assembly enacted "comprehensive penal and sentencing reform legislation . . . as proposed by the Tennessee Sentencing Commission [("the Sentencing Commission")]." *State v. Cummings*, 868 S.W.2d 661, 665 (Tenn. Crim. App. 1992). Included in the reform were new criminal statutes governing "offenses against property." Tenn. Code Ann. §§ 39-14-101 to -154. The 1989 version of section -402 was very similar to the current burglary statute, except the 1989 version included "habitation" in subsections -402(a)(1),(2), and (3) and did not include "assault" as an alternative element that can be used to prove burglary. *See* Tenn. Code Ann. § 39-14-402 (1989). The 1989 statute was substantially similar to the Texas burglary statute on which it was modeled.

Attached to the brief of the *Amicus Curiae* is a document titled "Proposed Revised Criminal Code" prepared by the Tennessee Sentencing Commission for the 96th General Assembly which contains several pages of comments. These comments were presented in 1989 and are not codified in the Sentencing Commission Comments currently included after section 39-14-402. Defendant and the *Amicus Curiae* claim that the one of the 1989 proposed comments supports their conclusion that the word "building" in subsection (a)(3) means a building "not open to the public":

> As in the present law,[2] however, one who, with *intent* to commit a felony or theft enters a building open to the public or otherwise has consent to enter, such as a servant or brother-in-law, commits no burglary and can be prosecuted only for the commission or attempted commission of the offense intended, unless the offender remains *concealed* after consent to his or her presence has terminated.

Tennessee Sentencing Commission, Proposed Revised Criminal Code (1989), at 156 (emphasis added). Concerning the above comment, the *Amicus Curiae* argues:

> [T]he Comment[] indicate[s] that one who enters a 'building open to the public," without the intent to commit an offense, but who later commits a theft, "commits no burglary" and can only be prosecuted with the substantive theft offense.

---

[2] The "present law" referred to in the comment was Tennessee Code Annotated sections 39-3-404 (1982) [repealed by Acts of 1989, ch. 591 § 1, effective November 1, 1989]. Under section -39-3-404, burglary in the third-degree was "the breaking and entering into a business house, outhouse, or any other house of another, other than a dwelling house, with the intent to commit a felony."

That is not what the hypothetical factual pattern set out in the comment indicates at all. Under the fact pattern outlined in the comment, we would agree (1) that the person would not commit burglary under the law in effect before November 1, 1989, because the person did not break and enter into a building, (2) the person would not commit burglary under the current subsection 39-14-402(a)(1) because the person entered with consent or entered a building open to the public, and (3) the person would not commit burglary under the current subsection 39-14-402(a)(3) because the person did not commit or attempt to commit a felony, theft, or assault.

On the same page as the above quoted comment, the following comment appears:

> Subsection (a)(3) includes as burglary the conduct of one who enters without effective consent but, lacking intent to commit any crime at the time of the entry, subsequently forms that intent and commits or attempts a felony or theft. This provision dispenses with the need to prove intent at the time of entry.

*Id.* The fact pattern of this comment provides that a person who commits or attempts a felony or theft after entering without the consent of the owner commit burglary. The comment says nothing about the structure being or not being open to the public and therefore supports our conclusion that the legislature did not intend to define "building" in section -404(a)(3) as a building that is not open to the public.

*Amicus Curiae* also argues that "[sub]section (a)(3) was intended primarily to solve an evidentiary problem -- why should it be necessary to prove intent at the time of entry (which could be hard to establish beyond a reasonable doubt) when the defendant had gone on to commit the substantive offense?" We agree that this may have been one of the reasons for the inclusion of subsection (a)(3); however, if it is, nowhere is the need to "solve an evidentiary problem" greater than when attempting to prove intent to commit a theft when a person enters a building open to the public. Intent generally has to be proven by circumstantial evidence, for example the manner of entry. *See Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973) (in the absence of an acceptable excuse, a jury can infer intent to commit theft based on illegal entry into a residence or a building in which there is property which is the subject of larceny). It is highly unlikely that walking in the front door of a retail store would provide circumstantial evidence of intent to commit a theft.

The legislature *chose* to enact a burglary statute containing language that was substantially similar to subsection (a)(3) of the statute enacted in Texas. We presume that the legislature was aware of the fact that the Texas State Bar Committee rejected the

recommendation to remove subsection (a)(3) from the final draft of the Texas burglary statute made by the staff of the Texas Penal Code Revision Project. *See Murfreesboro Med. Clinic, P.A. v. Udom*, 166 S.W.3d 674, 683 (Tenn. 2005) (courts presume that the Tennessee General Assembly knows the state of the law). The legislative history does not support Defendant's and *Amicus Curiae's* claim that the legislature intended to limit subsection -402(a)(3) to buildings not open to the public.

### *Revocation of Consent*

*Amicus Curiae* claims that the owner of a retail store effectively consents to the entry of individuals previously banned from entering the store if the retail store allows them to enter, shop, and conduct legitimate transactions. We disagree.

In *State v. Ash*, 12 S.W.3d 800, 803 (Tenn. Crim. App. 1999), a criminal trespass case, this court determined that the Clarksville Housing Authority could revoke consent for Mr. Ash to enter its property, which was open to the public. Tennessee Code Annotated subsection 39-14-406(c) increases the grade of aggravated criminal trespass from a Class B misdemeanor to a Class A misdemeanor if a person enters "a building of *any hospital*, . . . or public school" without the effective consent of the property owner. Tenn. Code Ann. § 39-14-406(c) (2015) (emphasis added); *see also State v. Lyons*, 802 S.W.2d 590, 591 (Tenn. 1990) (defendant convicted of criminal trespass for entering onto the grounds of a public school). Because the phrase "a building of any hospital" necessarily includes a building of a public hospital, the aggravated criminal trespass statute, when read along with *Ash*, implies that consent to enter a hospital building open to the public can be revoked. Thus, we conclude that an owner of property, including a building that is open to the public, can revoke its consent for a person to enter.

We determine that a retail store does not effectively consent to a banned person's entry into the store simply because that individual enters the store to carry on a commercial activity. Failure to detect or to even prosecute a criminal act, criminal trespass, does not prohibit enforcement or prosecution of subsequent criminal act. A retail store's failure to recognize a banned individual who enters its buildings does not amount to "assent in fact, whether express or apparent," for the banned individual to enter the retail store. *See* Tenn. Code Ann. § 39-11-106(a)(9).

### III. Conclusion

After a thorough review of the facts and applicable case law, we affirm the trial court's judgments. In case 105992, we remand for correction of the judgments in counts 1, 2, 5, and 6 to show the amended offense as Class A misdemeanor theft and in counts 3

and 4 to show the indicted offense as Class E felony theft. In case 106786, we remand for correction of the judgment in count 1 to show indicted offense as Class E felony theft.

_____
ROBERT L. HOLLOWAY, JR., JUDGE